May it please the Court, my name is Richard Schor, and I am here on behalf of the appellant Gilbert LLP. Your Honors, Gilbert LLP handled the underlying case on behalf of Alpha from the inception of the case through trial, appellate briefing, and planning and preparation of collection efforts. Gilbert LLP secured a $26 million jury verdict on Alpha's behalf. Mrs. Mattes and Copley, who had been handling the case at Gilbert LLP, subsequently left the firm to form Weisbrod, Mattes, and Copley. Alpha elected to discharge Gilbert LLP without cause and retain the new firm, which mainly pursued collection efforts, and ultimately entered at least two settlements with the defendants. These proceedings were brought to resolve Gilbert LLP's entitlement to a fee in this case. Your Honors, dividing the 40 percent contingency fee between Gilbert LLP and Weisbrod, Mattes, and Copley, PLLC, the two firms whose efforts effected Alpha's recovery, to use the words of the Heintzman case, is not only fully consistent with Virginia law we submit, it is the result that Virginia law requires. The District Court's decision limiting Gilbert LLP's fee to a small fraction of the hourly basis fees on a deeply discounted hours times rates load star formula is clear legal error under controlling Virginia authority, subject to de novo review. The District Court's decision also is contrary to important public policy in Virginia and the Fourth Circuit, because if affirmed by the Court, it would curtail, if not effectively eliminate, client's access to Contingency Fee Counsel. But you do agree that the measurement in this case under Virginia law would be quantum meruit? We agree that it's quantum meruit, Your Honor. And so in that regard, you look at what the discharge attorney did, not what the succeeding firm did in this case? Well, I think in this case, you look at both, Your Honor, and I'll explain why that is the case. The starting point is the Campbell County case, which both parties have cited. In that case, the Virginia Supreme Court listed the factors that a court should consider in a quantum meruit analysis, and one of the factors that the District Court notes is whether or not the fee is absolute or contingent, it being a recognized rule that an attorney may properly charge a much larger fee where it is to be contingent than where it is not so. Well, am I correct that in using those factors that the lower court was supposed to use, the court did not consider the contingency agreement or the results reached by Gilbert? Correct. And we believe that was legal error. So you say that your argument would be, even though you got the other four or five factors right, because you didn't get these two, it's an abuse of discretion. Well, we believe that it was clear legal error. We believe that it was legal error. It's subject to de novo review because the court below did not apply those factors. It simply wrote them off. It said that there are no, after it did the Lodestar analysis and deeply discounted the hourly basis fees, it simply ignored the contingent nature of the fee agreement. It ignored the outcome. It ignored the substantial amount that was at issue and other factors that it was required to consider. But we think that the central point is really the contingent nature of the arrangement. Whereas here, Your Honors, a contingent fee firm secures a large jury verdict before it is discharged without cause, we believe that the predominant factor in determining a quantum contingent nature of the fee, because the major risk factor on which the fee was contingent was eliminated by the jury verdict. Now while it maybe makes sense early in a case as in Heintzman to focus on the amount and character of the services rendered, really the hours times rates, that is so only because the first firm hasn't incurred significant risk and hasn't eliminated any risk. But whereas here a firm has eliminated a major risk factor through securing a jury verdict, the contingent factor under Campbell County, we believe, takes center stage. And we also believe that the results secured under the Abrams case, for example, of this court is a very significant factor. Under Campbell County, the firm is entitled to a much larger fee where it is to be contingent than where it is not so. The Heintzman case itself indicates that securing a verdict warrants a contingency fee. The Virginia Supreme Court denied the first attorney a contingent fee for two reasons. First, he had done nothing of value for the client. The second firm had handled the case from A to Z, all the letters of the alphabet. Here by contrast, Gilbert worked on the Alpha case from its inception through a $26 million verdict and beyond, while Weisbrod, Mattez, and Copley contributed, we are not saying that they did not. They did not alone affect the client's recovery. It was a joint effort that contributed to the client's recovery. And the use of the language affect the client's recovery, we think, in Heintzman, emphasizes that point. While only the second firm affected the recovery in Heintzman, both firms' efforts together, albeit sequentially, affected the client's recovery here. We don't think that that really can be seriously disputed. And secondly, and this is really very significant, the court denied the first attorney a contingency fee because the court concluded that the result that he would have achieved had he not been terminated was, quote, unquote, entirely speculative. And the specific language that the court used on this is really quite significant. As the court put it, the Virginia Supreme Court said the first attorney, quote, might have affected a greater settlement or won a larger verdict, considering the vagaries of trial, he might have recovered nothing. That is at page 964 of the decision. The court's focus on the verdict and the vagaries of trial is particularly significant here because we know here that Gilbert LLP won a $26 million jury verdict. We know that Gilbert LLP overcame the vagaries of trial. This is not merely difference in degree, Your Honors. This is difference in kind. Under the reasoning and rationale of Heintzman, Gilbert LLP is entitled to a share of the contingency fee, unlike the attorney there, who had done essentially nothing of value and had not contributed to the client's recovery. And Your Honors, I'd like to direct the court's attention particularly to another Virginia case, Virginia Supreme Court case, that received, frankly, scant mention in the briefs, Hughes v. Cole, 465 Southeast 2nd, 820. That's a case involving a discharge contingency fee counsel where the Virginia Supreme Court approved a fee award that was clearly a multiple of the hourly fees of the attorneys involved. In that case, the Virginia Supreme Court did not cite Lodestar or discuss hours times rates. Rather, what it said, and let me just set the stage, it was a fight over the proceeds of a lottery ticket and the client hired a whole series of lawyers. The first lawyers that were hired worked the case for a while in North Carolina. I believe they got summary judgment. That was then on appeal. They were discharged without cause. Several sets of other lawyers were then hired to finish out the proceedings in North Carolina and continue in Virginia. What the court said there with respect to the first set of attorneys was the Virginia Supreme Court relied, this is a quote, relied on the rules which pertain to strictly contingent fees. That's at page 833 of the opinion. It affirmed an attorney fee award equivalent to more than $850 an hour for attorneys who had handled, as I said, part of the case in North Carolina. Other attorneys finished it out there and moved on to proceedings in Virginia. These were local North Carolina attorneys. The only reason that we can figure out their effective hourly rate under the fee award is that the court listed their hours but it didn't talk about their rates and it didn't do a rates times hours analysis. It didn't start with that. It simply approved the fee that they would receive of $850,000 for less than 1,000 hours of work. You're talking about work that was done in 1992, 1993, nearly a quarter of a century ago by local law firms in North Carolina. The Abrams case, which is a 2010 case, talks about $300 an hour being sort of the going rate in North Carolina for legal services. To the extent that this was 300 or 20 some years ago, substantially less than that. You're talking about a three, four, five times multiplier to reflect the contingent nature of that representation. Mr. Schor, are you going to talk at all about costs as opposed to fees? Yes, Your Honor. Because it would seem to me that a different analysis might apply there. Right. So the main reduction in the claim or the lien for costs was in the damages expert. Now, obviously, where you get a 26 point some million dollar verdict, the damages expert's testimony is really key in terms of achieving that result. And here, the reimbursement for the damages expert was reduced from approximately $1.8 million to $700 and something thousand dollars. Now, this is really a different analysis from the fee analysis. Quantum Merowit does not apply to expenses. Campbell County says compensation. It doesn't say reimbursement for expenses. So really the question is, what's the appropriate measure of recovery for Gilbert LLP for amounts that it in good faith expended out of pocket, advancing those amounts for the client based on the client's contractual commitment to repay those amounts from any recovery? And it can't be the same analysis, the same type of quantum Merowit analysis because the same factors don't apply. The factors of, is the client going to be bound to the initial law firm and not able to switch? That just doesn't apply. The ethical standards that would say that when you're seeking a benefit in terms of compensation to the law firm, it has to be a reasonable fee. That also doesn't apply. The law firm was not going to make any profit on the expenses that it paid to third parties such as the expert. At most, it was only going to recover the amounts that were expended. So there was, not only was there no incentive to inflate those amounts, but there was every that was providing real benefit to the case because if the case was lost, you weren't going to get it back. So the smaller the number, the better. If the case was won, you weren't going to get a bonus on it. You weren't going to make money on it. You were only going to get reimbursed. So we think that the mode of analysis is really completely different. And indeed, whereas quantum Merowit under Campbell County and under Heintzman and other doesn't apply, nothing supplants the contractual obligation under the engagement agreement between the firm and the client to reimburse for these costs. It ought to be the burden of the client to establish that in some way, the expenses are so far beyond the pale that they shouldn't be paid. And fundamentally, if Gilbert LLP had an obligation to pay those costs to the expert absent really high bar, we believe that the client should be obligated to reimburse. We think it's really a completely different mode of analysis. And what a lot of this comes down to on both the fee and the expense side, Your Honors, it's a bigger question than just Gilbert LLP. Now, obviously here, Gilbert LLP believes that a grave injustice was done in carving down its fee and its expenses to a level where this case, notwithstanding that the firm handled the case diligently, was committed to the client, was loyal to the client and secured a fantastic result for the client, that it was carved down to a level that was an absolute financial loss for the firm. But if this decision is affirmed, what this will say to lawyers in Virginia and to lawyers within the Fourth Circuit is that you can take on a contingency fee case, you can take the risk of no recovery, you can invest millions of dollars potentially in hourly fee equivalents, you can advance millions of dollars in costs, and at the end of the day, you will suffer a financial loss from having taken the case, notwithstanding a fabulous outcome, a fabulous result in the case. And in that circumstance, Your Honors, we believe that no rational firm would accept a contingent fee representation if the district court's decision is upheld. And that is, we think, a very significant concern under Abrams. We think what animates Heintzman is access to contingent fee counsel, et cetera. And the best way to divide the fee here, to go back, Judge Floyd, to your question, is to do it in proportion to the relative investments of the two firms. You take the 40 percent fee, you look at the hourlies that each firm incurred and you divide it in that fashion, particularly appropriate here, where it's the same team of lawyers at both firms that did the work. But you're not asking us if we were to send it back. The lower court still got to apply the Campbell factor in evaluating the fee, doesn't it? Correct, but I believe that it should be sent back on a remand, I mean, it should be sent back on remand with instructions to the district court to divide the 40 percent contingency fee, as in Kidd and as in Appleton, between the two firms in proportion to their relative contributions, which should be measured by their relative hourly fees incurred. Well, that would go a little bit, I mean, I take your point, this is an abuse of discretion standard which is pretty high, but you're saying that the district court really inadequately analyzed the Campbell factors and why would it not suffice? I understand that you would like more, but why would not the appropriate response be to send it back for the appropriate consideration of those factors? Well, I don't, because Your Honor, I don't think that it is simply, I don't think it's an abuse of discretion standard because I think that the framework that was applied was the wrong framework and that is subject to the correct framework, what the Campbell County factors mean, not necessarily how they're applied, but what they mean and what framework they establish is subject to de novo review and the point is where you have a contingent firm that is subsequently discharged that has secured a jury verdict of $26 million, a jury verdict for the client, the two firms under Heintzman are then jointly effecting a recovery. I have one more question. Go ahead. With regard to the cost, doesn't the contract clause that you cited in your brief require that Gilbert recover payment for Alpha, require payment, not what the judgment said? Well, two things in response to that, Your Honor. First, Alpha does not contend, they contend that the fee agreement is a dead letter and we agree in effect with respect to the fee portion of it because what Virginia law does is it supplants the contract with Quantum Merowith and I've discussed the basis for this to the division of the contingency fee, the 40 percent contingency fee. But further, Your Honor, even if you would look to the actual contract, what the contract says is the firm is entitled to a contingency fee. Then it has a termination provision with two prongs. The first prong says if we're terminated, we get our hourlies and the second prong says that if there's a recovery within a year, we get an extra benefit. We get to elect to take the contingency fee if it's greater. So what Alpha has done in their argument is they've said, well, they point to the second prong and they turn it on its head. It's a benefit under the contract to Gilbert. They turn it into a limitation, which we think is an impermissible construction. But more importantly, the firm didn't get its hourly fees. Alpha did not write a check for $4.1 something million to Gilbert immediately upon the termination. In fact, what Alpha has done is to dispute that it has an obligation to pay the hourly fees. So the second prong, which is the contingency fee within a year, is linked to the first prong, which is you get your hourlies. But in any event, Your Honor, Judge Floyd, the fee agreement is essentially eliminated as a factor because under clear authority, whether it's Campbell or Heintzman, the fee agreement is supplanted by the quantum merit analysis, and that mandates in this circumstance that the contingent nature of the arrangement, the results secured, are the major factors.  Good morning, Your Honors. May it please the Court. My name is William Copley, and I am here on behalf of the appellees in this matter, Jordan Fishman and his companies. Your Honor, Gilbert's primary argument in this case is the district court erred by basing its fee determination on the well-established lodestar method rather than its unprecedented hours-based contingency fee splitting theory under which it contends it should have received a share of the 40 percent contingency fee in its terminated engagement agreement. To prevail, Gilbert must establish that the district court was not only permitted but required to forsake the well-established lodestar method for its unprecedented theory. And it cannot meet that burden. I'd like to start today by discussing why the district court was within its broad discretion to apply lodestar and explain why Gilbert's unprecedented theory is contrary to controlling Virginia law, applicable rules of Virginia ethics, and its engagement agreement and the promises it made to its client. And then I'll explain why the district court appropriately applied lodestar, including the Campbell County factors, to determine Gilbert's hours and rates in this case. But let me start with the standard, Your Honors. It's clear that this is an abuse of discretion review. This court has said that it defers to district courts because the district court had a ringside view of the proceedings and an intimate knowledge. Did the court analyze most of the Campbell County factors? Your Honor, the district court expressly stated that it did. Now it didn't. No, I'm not. That wasn't my question. I mean, when, do you, is it, are you saying that the district court analyzed, went through and discussed in a fashion sufficient to facilitate appellate review, the Campbell County, all of the Campbell County factors? I do not think that it went through factor by factor and applied it. In fact, there's some it really didn't touch upon at all. I completely disagree. And here's why, Your Honor. And I think you have to read, I think, I think the Supreme Court's decision in Purdue v. Kenney extra win is very instructive here because there it said that you don't have to walk through each of those factors because many of them are subsumed in determining what a reasonable rate is and what a reasonable hour is. I think this court, particularly given this is an abuse of discretion review, should take the district court's word for it. When it said, I looked at the Campbell County factors and I did not find that an enhancement is warranted under these circumstances. Well, that certainly short circuits our role, doesn't it? Well, well, Your Honor, I think given the deference that this court has, has said that it will extend in decisions like Carol and Robinson, so we don't look to determine if in fact the district court did what it said it did. I think what you have to do is say, were the hours and rates reasonable, did, were the reasons that the district court gave for reducing the hours and rates reasonable under the totality of the analysis? Was it consistent with those factors? But I don't think that there's a requirement and I'm not aware of any decision where it says that you have to specifically go through and break down item by item each factor in that analysis. And I think that would be particularly unwarranted given the evolution of the case law since 1922, including in Supreme Court decisions like, um, city of Burlington v. DeGue and, and, and Purdue v. Kenney X for a win, where the Supreme Court of the United States has expounded extensively on the nearly equivalent Johnson factors and explained why that analysis isn't necessary. And that generally what is required is that you determine a reasonable hourly rate and a reasonable hourly fee. And here the district court explained extensively why it did. Counsel, in that, you said, we sort of assumed that it was done because he said it was done. Where's the evidence that there was a consideration of the contingency aspect of this case when, when determining the reasonableness of the hourly basis? Well, Your Honor, the, the district court in the transcript of the hearing specifically said that it would consider that factor and it did not make an adjustment of those factors. But if you look at the cases that the district court relied upon when setting the hourly rate, many of those were contingency fee cases. And so when it determined the hourly rate based on cases that involve contingency litigation, it was inherently applying a rate that already incorporated that for it to, there is a difference here. It seems to me in that for all practical purposes, there was no contingency left. The major contingency that had ever existed in this case was gone by the time the, uh, the client changed firms. If you know, Your Honor, can I please address that because I think it's a very important case and I think it's absolutely not correct. The, the verdict in this case, which is what they keep harping on, happened in year one of a four and a half year fight to get the client's recovery in this case. The, the judgment in this case, It was irrelevant then? It wasn't irrelevant, but the judgment, Insignificant? It was, it was, it was, it was not without significance, but Your Honor, the judgment was against companies in Dubai and China. Two companies, or two jurisdictions that do not recognize U.S. judgments. So you're saying that the recovery was every bit as fraught as the initial verdict, as the initial? I think it was even more so, and here's why. Because when you look at the judgment enforcement that had to happen, these defendants didn't have any identifiable assets in the United States. It took 14 different judgment enforcement actions litigated around the country, including a case litigated all the way up through oral argument in the Second Circuit. The success in this case was unprecedented. I'm not aware of a single other case where somebody has enforced a judgment against a Chinese company. If you want to look at the allocation of risk and how much of that went to the substantial post-judgment enforcement in this case, look at the settlement offers. And this is in the record. The most that the, the Chinese defendant had offered to settle this case for while the was $1 million. It settled the case for $16 million. And this goes to an important point under Heisman, Your Honor, and it's why, it's one of the many reasons why their contingent fee splitting theory is irreconcilable with Heisman. Heisman prohibits recoveries based on speculation. They say that there's no speculation in this case because there was already a jury verdict. But there was, there was still incredible uncertainty in this case. Help me then with costs. There was no uncertainty about costs. Those costs were expended. They were expended, but there was substantial uncertainty as to whether or not they should have been. And this is important, Your Honor, because. But why those were, do you apply quantum narrow it with analysis with respect to cost recovery? I think that the district court has a role in reviewing costs that are. To answer my question, though, the cost, Gilbert actually paid third parties for the costs that it seeks to recover, right? Why, why, where is the uncertainty about the payment? Not, not second guessing about whether they should have been paid, whether they should have been higher or lower, whether or not the expert testimony was helpful or not. Where is the uncertainty about the payment? There was no uncertainty that the expert expenses were paid. Many of the other expenses, the district court. And doesn't the engagement letter state very clearly that Alpha agrees to reimburse for expert fees in the event Alpha terminates Gilbert? The engagement letter contains that language. May I address why I think it's reasonable for the district court to look at whether or not the expenses were reasonable? Because I think it's important. When, when the district court prepared a Lanham Act fee petition in this case earlier, we prepared it. We did not seek, we cut many of those hours and we cut hundreds of thousands of dollars in expenses, the same ones that the district court here. And it was for an important reason, Your Honor. When those, when those expenses first came in, we, my, my partner and I wanted to challenge those. And this was all before the district court because they were excessive. The expert had run up hundreds of thousands of dollars at rates of $375 to $650 for simply inputting information from documents into an Excel spreadsheet. We wanted to challenge the bill. The district court, I mean, Gilbert, the partner who was working on Gilbert with the expert said, no, you can't do that. You will undermine my ability to work with the expert. And additionally, you will undermine the reputation of the firm. We were overruled. When we prepared and they, and they paid the fee anyway, when the, when the, when the time came to file a Lanham Act fee petition and when we sought those costs, we, we exercised billing discretion not to seek those on Mr. Fishman's behalf. Gilbert didn't seek those fees on his behalf from the defendants when it prepared a Lanham Act fee petition. But now they're asking Mr. Fishman to pay for the very expenses that it would not seek on its behalf because they weren't defensible. And I think, Your Honor, I'm not aware of any area of the law where one party gets to simply say that to, to make up a number and say, we're entitled to this amount. And the district court is, is bound not to apply, is bound to impose that on the other side. Are you suggesting that Gilbert is not going to pay an amount or didn't pay the amount to the expert? I'm not suggesting it didn't pay it. What I am suggesting is it wasn't a good steward of the client's resources and that the district court appropriately reviewed it. This court keeps going back. But what's at issue here is, you begin with a contingency fee, the client leaves, we're in quantum merit. Quantum merit doesn't help you on the costs. So what does? What's the analysis that governs the district court's assessment of the appropriate amount of costs to award? I think, I think that inherent within the, within the attorney-client relationship, and Heinsman I think is significant here because it says the attorney-client relationship in a contract between attorney and client is different than any other contract. Inherent with that is the fiduciary obligation to be a good steward of your client's resources. And the district court, when looking at the cost demanded, appropriately considered whether or not Gilbert LLP was a good steward of the client's resources in incurring these costs. And it had a legitimate role to do that. The district court cited like eight different cases where other courts have looked at costs that lawyers sought to receive from their client and determined whether or not they were reasonable. And that's all the district court did in this case. But Your Honor, let me turn back to Gilbert's request for a contingency fee split. Because that's really the only argument that they, that they really make on why the district court's fee determination was wrong. And Your Honor, that result is clearly contrary to the controlling decision in Heinsman. In Heinsman, the, the Supreme Court of Virginia addressed this very circumstance. It set forth a clear rule. It said whenever you have a counsel that's retained on a contingency basis that is discharged without cause, and then the client subsequently obtains a recovery through successor counsel, that the discharge attorney will be due fees in Quantum, Maryland. And Your Honor, it, it, Gilbert wants you to construe Quantum, Maryland to be broadly to encompass even the, the contingency fee that the Supreme Court of Virginia said you, they couldn't even contract for under these circumstances. And Your Honor, that doesn't make sense. And it's directly contrary to Heinsman for at least four reasons. First, Your Honor, the Supreme Court of Virginia didn't just say a discharge attorney is due Quantum, Maryland. It defined Quantum, Maryland. It defined Quantum, Maryland to, taking the definition from Campbell County as the reasonable value of the services rendered, not in benefit to the client, but in themselves. Gilbert's unprecedented contingency fee splitting theory violates both halves of that definition. It's not based on the value of the services in themselves. And it's not independent of the benefit to the client. Second, Your Honors, Gilbert's unprecedented contingency fee splitting theory is, is contrary to Heinsman's prohibition on relying upon the contract. Gilbert says it's not relying upon its contract. But if you look in its briefs, the only way it tries to reconcile getting a partial contingency fee with the definition of Quantum, Maryland and Heinsman is it says the intrinsic value of the services rendered is a partial contingency fee because that's what, quote, all the parties agreed at the outside of the case. Well, what all the parties agreed at the outside of the case is simply a euphemism for a breach of contract. No, I don't understand, Counsel, that Gilbert's argument is that. I think their argument is that there was a contingency fee, and I think Judge Duncan references it as well, in the sense that the contingency was whether or not I would win your case. That's what it normally, you win the case, we share in that result. If you lose the case, I take the risk, I get nothing. Their point is they won you, your client, a $26 million verdict. That contingency is finished. They won. So think about this, the logical extent of your argument is this. You win the case for a client, let's say $26 million, but hypothetically keeping the same number, $26 million verdict. And the other side said, I'm going to appeal this case, the losing defendant. The client turns to the lawyer, I'm going to fire you. I want another lawyer to do it, right? Ten days after they fire the first law firm that got them the $26 million verdict, the defendant changes their mind, but in the meantime during that ten days, they have signed a contingency fee with a new client, a new lawyer, saying we'll give you 40% of what we collect. So if ten days later the defendant says, I'm not going to appeal, here's your $26 million. So you're saying that client could just walk away and say, well, wait a minute, I fired you, it's just quantum merit. And you totally get, because the judge said almost a quote, I don't care if they get a bazillion dollars, the new firm. But quantum merit deals with equity, that's fairness too. And I think the Latin literally means as much as he deserves. That's what the Latin means, quantum merit, as much as he deserves. So you're telling me the contingency is finished, I won your $26 million verdict, you can just fire me, and it's hypothetical, and ten days later somebody else gets 40% and I'm left with, and not only that, the district court cuts the fees to an incredible percentage. That's what it seems to be the argument, the contingency is over. Your Honor, the contingency was not over for the reason that I said earlier, which is- Well I know you said recovery, you had to go to 14 different things, but all of that was because you had a verdict for $26 million, that was your stick. And you did a lot of, obviously did a lot of work, nobody's saying you didn't. But think about this, they were denied the right to look at what you did in terms of how much money you were getting, for example. Well it may be irrelevant as to how much money you're going to get, but wouldn't it be relevant to see how much time you put in, in reference to first before you cut their time out and say, no $11,000, that's too much. Well wouldn't that at least be a comparator? Because like you said, it was rigorous, why'd they deny that right? Absolutely not, Your Honor, because under controlling Virginia law, that's irrelevant. First Your Honor, Virginia law is clear that a contingency fee agreement is contingent upon a recovery, not upon a judgment or a verdict. That's Wenger v. Glasser and Glasser, we cited in our brief, controlling Supreme Court of Virginia precedent. Second, Your Honor, it's directly contrary to Heinsman. Heinsman didn't just use the term quantum merit, it specifically defines what it means in this context. And it defined it to mean the value of the services rendered in and of themselves and not in benefit to the client. Any amount that we did or any work we did or anything else is irrelevant under how the Supreme Court of Virginia and its controlling decision define quantum merit in this context. What does value mean then if you don't, what does value mean? It means exactly how Morris Law Office, the Western District of Virginia interpreted Heinsman, which is it means you do a lodestar analysis. What was the value of the services themselves? And that's exactly what... I'm asking you. How do you determine the value to, if you say you don't look at the value to the client, how do you determine the value to the law firm? You apply lodestar, reasonable hours, reasonable rates. And that's exactly what the district court did in this case. What's reasonable? Again, that is what the district court has discretion to determine. But don't you have to look at what's reasonable in reference to lawyers handling contingency fee tort cases? I don't believe you do. I mean, you'd certainly... What we did after the fact is entirely irrelevant to the value of the services that Gilbert LLP rendered up to the point of termination, which is the sole basis that the Supreme Court of Virginia and Heinsman said should be the basis of the fee award. And that's exactly what the district court did in this case. Well, let me ask you this. When you do a contingency fee, obviously, you have to be ethical and do the best you can, as obviously Gilbert did and you did. Both firms did a great job. That's not even an issue. But when you're a contingency fee lawyer, it's like water for chocolate. Theoretically, you want to do as little as you can to get your contingency fee, because the more hours you put in, the less you get, right? Is that correct? I don't know if it's the more hours you get, but... Don't you know what a contingency fee is? Yeah. I'm not saying it's just normal arithmetic. If you set for a 40% recovery, the more hours you put in, the less money effectively you get. Yes, Your Honor. All right? Correct? Yes. So the value to the client has to be a higher hourly rate the way it's structured, correct? Then it wouldn't be, for example, if you're a lawyer being paid about an hour, it's just the opposite. The more hours I put in, the more money I make. Your Honor, I would suggest that analysis is directly contrary to the Supreme Court's decision in Perdue v. Kenney, X for a win, and I'd ask the Court to consider the analysis in that case. There's one point that I really want to emphasize. I'm not just going to value. I'm just trying to find out what does value mean, because we are required to look at value. And if you're going to discount what it means to the client, now you want to discount what it normally means to the lawyer who handles those kind of cases. So what does it mean? Your Honor, it means reasonable hours times reasonable rates according to the factors set out in Campbell County, which is exactly what the Supreme Court of Virginia... Is that solely based on where you... geography? Well, the hourly rates? Yes. They should be... This Court has held, including in numerous cases like Rum Creek Coal, that you look to the rates in the prevailing community. And the only time you can look outside of those rates, or outside of the community to determine what reasonable rates are, is if you can meet two factors. One is that you can show that the case is extraordinary and adequate counsel was unavailable in the jurisdiction. And two, that the choice of outside counsel was reasonable. Here the district court specifically found that qualified counsel was available at the rates paid. And therefore, under controlling Fourth Circuit precedent, you can't look to other rates. The final point I'd like to make, Your Honors, is regardless of how this Court looks at Virginia law, Virginia's... Gilbert's engagement agreement with the client precludes it from getting even a partial contingency fee case. At the outset of the engagement... Well, you like the engagement letter on the fees, you just don't like it on costs. Well, what I don't like is Gilbert picking and choosing which parts they're going to... They're going to enforce. But that's not... That's not our... That's not the basis of our decision. Your Honor... We would rely on the language of the agreement, which goes out the window for fees, but not for costs. Okay. But one... The one point I have to make is that Virginia Rule of Professional Conduct 1.5c expressly states that if a lawyer is going to seek a contingency fee from a client, it has to disclose in writing out the... In the outset when that fee will be triggered and how it will be calculated. Here Gilbert did this. It defined the trigger as it had to... There had to be a recovery at least within one year of termination of the contract. In this case, the contract was terminated... It would be inherently unfair and inequitable and contrary even to the concept of quantum merit to allow Gilbert to obtain a contingency fee and blindside its former client by seeking that fee in precisely the circumstances in which itself said at the outset it wouldn't be entitled to one. Your Honor, for all of these reasons, we believe the district court's decision was well-reasoned and correctly decided and well within its broad discretion, and we ask this court to affirm. Thank you, Mr. Coakley. Mr. Coakley, I'm sure you have some time reserved. Thank you, Your Honor. I want to address a number of points that Mr. Coakley made. First of all, on the results secured point, Mr. Coakley's point is, Alpha's point is, that the results secured are only some kind of inherent value going to efficiency. I have no idea what that means, but not the value of the services to the client. It relies on Campbell County and Heintzman for those propositions. You have to ask yourself, in Heintzman, the court said the first lawyer did nothing of any value. That's just absolutely the fundamental premise of Heintzman. The court then goes out of its way to say that the attorney is entitled to a fee in quanta meruit, that reflects the results secured, not in benefit to the client, but in and of themselves. Now, why would the court have said that? The court said that because they were trying to help the attorney, not limit the measure of recovery. If that attorney was going to get a fee based on results secured, and results secured were in benefit to the client, that attorney had done nothing to secure results for the benefit of the client. That attorney was going to get nothing. So the reason that in that context, the Heintzman court said results secured in and of themselves, the inherent value. They're really talking about, let's look at something like hourly fee value, because otherwise the lawyer's going to get nothing. Similarly, in Campbell County, there was not a contingent fee arrangement. The lawyer was operating under an engagement letter that had no fee agreement in it. If we were to send this case back on lack of analyzing all the Campbell factors, would you agree or disagree that the district judge should apply a low star analysis? No, I disagree, your honor. What would you have us tell the district court, this is the way you've got to evaluate this case, other than the Campbell factors? I think the low star factors are relevant in a case like Heintzman, or a case in which the lawyer, the contingent fee lawyer, is discharged early in the case, where really it hasn't incurred much risk. It certainly hasn't done anything of real benefit to the client. In Heintzman, the lawyer was discharged before the complaint was filed. So early, early in the case, low star may make, as a starting point, may make some sense. But we're in a completely different environment where you have a jury verdict for $26 million, which eliminates the major risk factor, the major contingency of the case. Why would that not be appropriate for the district court to analyze, in light of other cases, actually analyze the factors underlying a low star analysis? Well, I think the district court can apply the factor, but I think this court should provide some guidance to this district court, to other district courts, to lawyers, and to prospective clients, to say the whole point of this area is certainty is important, to provide additional certainty, and to say, look, we're not just going to leave it to the vagaries where you have this kind of a circumstance. But here, I think the court needs to provide direction that says, in this circumstance where there's a jury verdict, particularly a jury verdict of this magnitude, the predominant factor and the starting point is the contingency fee, not the hours. So you look at the contingency fee, you say the client promised 40% to two different law firms. Take the 40%, the court has the inherent power to do that, and divide it between the two has been satisfied, the contribution to affecting the client's recovery is there. I want to mention, I think, quickly, a couple of other factors. One is that there's a very heavy reliance by Alpha on fee-shifting cases. In the city of Burlington v. Dade case that they rely on very heavily, the Supreme Court majority opinion actually says that there's a distinction between fee-shifting arrangements and private fee agreements when it says we're not going to consider a contingency fee enhancement. So all of those fee-shifting cases go out the door. And similarly, in Lodestar, they don't cite contingent case after contingent case for Lodestar. They cite hourly case after hourly case for contingent Lodestar. The only ones that they cite that are contingent fee agreements are Heintzman, which we've discussed extensively, Hughes, which I discussed, it was a three, four, five times multiple of hourly fees to compensate for the contingent arrangement. And Morris Law Office, which it's in our briefs, I won't go over it again, is number one distinguishable and to the extent that the court would conclude it's not distinguishable. It's just flat out wrong because it writes out the contingent fee factor from Campbell County. And on the expense point, just very quickly, you know, Mr. Copley tells a story which is really not supported by the record. There's only one brief statement in an affidavit that they provided, that they were opposed to paying the fees of the expert, that they objected, they this, they, but they were partners in the law firm that paid the expert. They didn't resign. It's not clear what action they took. And indeed, when they filed their fee shifting application, they sought the expense of the expert. They reduced it by $500,000, but they didn't reduce it by $500,000 for the reasons they now tell this court. They told the court below and the court below concluded that it should reduce those fees. It was because some of the work was not used and other things like that that really had nothing to do with whether the services that were provided were compensable by the law firm and therefore compensable by the client. And again, they reduced the claim only by $500,000. Here the judge took more than a million dollars away at their urging. So we think that we should be reimbursed for the full amount that we in good faith paid to the expert on those amounts. The red light is not quite a suggestion. The time is clicking down. Thank you very much, Your Honors. We request on behalf of Gilbert L.T. that the court reverse. We'll come to our Greek counsel and proceed to our last case for the day.
judges: Roger L. Gregory, Allyson K. Duncan, Henry F. Floyd